IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARY BELLE RANSOM,**

    **Plaintiff,**

                              Civil Action 2:19-cv-515
                              Judge Sarah D. Morrison
    v.                          Chief Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Mary Belle Ransom ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 8). For the following reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on July 7, 2015, alleging disability beginning November 1, 2014. (R. at 210, 212.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 153–167.) Upon

1

request, a hearing was held on December 8, 2017, in which Plaintiff, represented by counsel, appeared and testified. (R. at 37–78.) A vocational expert ("VE"), Eric W. Pruitt, also appeared and testified at the hearing. (*Id.*) On May 15, 2018, Administrative Law Judge Jason C. Earnhart ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12–36.) On December 14, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT HEARING TESTIMONY

### A. Plaintiff's Testimony

At the December 2017 administrative hearing, Plaintiff testified that she experiences "[e]xcrutiating" pain in her lower back that "goes down [her] leg to right about at [her] knee, which is [her] sciatic nerve." (R. at 59.) She noted that she also has scoliosis, arthritis, herniated discs in her back, and that she frequently experiences neck pain. (*Id.*) She testified that she experiences pain every day. (*Id.*) Plaintiff reported that she does not drive or own a car, but that she either takes the bus or rides with her son to get to places like the grocery store or laundromat. (R. at 42.) She said she can lift about ten pounds and can only sit for 30 minutes to an hour at a time. (*Id.*) Plaintiff was working at Subway two days a week. (R. at 43.) She said that it became too much for her, so she dropped down to one day per week, but is now not working at all due to her pain. (*Id.*) While working at Subway, Plaintiff would occasionally sit but otherwise would be standing for her entire seven-hour shift. (R. at 44.) Later in the hearing, she clarified that she would call off from work "[a]t least twice a month" due to being in too much pain or due to being "[u]nder the influence of [her] pain medication." (R. at 54.) She testified about working at other fast food restaurants since 2008, both part- and full-time. (R. at 44–48.)

Although most of her past work experience is in fast food, Plaintiff stated that she worked full-time as a telemarketer in 2004 and 2005. (R. at 48.) At this job, Plaintiff was seated all day. (*Id.*) Asked why she could not perform that job now, she stated "I don't know why I couldn't do it. It's not even there anymore." (R. at 49.) The ALJ asked whether she could do that job if it were still there. (*Id.*) Plaintiff testified that she could if they allowed her to stand up at-will for around fifteen minutes every hour. (*Id.*) She said that has looked for jobs similar to this telemarketer job in the past couple of years but that she does not have transportation. (R. at 50.) She said she does not have a problem riding the bus but that if she has to walk a long distance to her destination, she needs to stop for breaks. (R. at 53–54.)

Plaintiff testified to a history of drug abuse but said that, other than using cocaine one time about a year prior to the hearing, she has not regularly used since 2007. (R. at 50–51.) She takes twelve medications regularly, including Percocet, Flexeril, and ibuprofen. (R. at 45.) The ALJ questioned whether she has a problem with pain medications and she said she does not, but she said sometimes her Percocet is "not doing [her] any good" and that she is therefore "forced to go to the emergency room," where she is normally given a shot of pain medication. (R. at 51.)

Plaintiff currently lives with her significant other, her son, and her son's boyfriend. (R. at 58.) She receives $121 per month in food stamps but has no other income. (*Id.*) She testified that she does chores as long as they can be completed in ten to twenty minutes. (*Id.*) Although she has some good days, Plaintiff said she wakes up with pain every morning. (R. at 60.) When she has a good day, she can make her bed, run the sweeper, and do dishes, but on a bad day she cannot even bathe herself. (*Id.*) Plaintiff's sister helps her twice per week with things in the house that she cannot do herself. (*Id.*)

B. Vocational Expert's Testimony

Eric Pruitt testified as the VE at the December 2017 hearing. (R. at 66–76.) Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could perform Plaintiff's past work as a telemarketer as well as three jobs that exist in significant numbers in the national economy: film touch-up inspector, document preparer, and printed circuit board touchup screener. (R. at 69–70.)

### III. RELEVANT RECORD EVIDENCE

Plaintiff started seeing Dr. Glen Iben, her treating primary care physician, in November 2014. (R. at 345.) When she first presented to Dr. Iben, she complained of several ailments including sciatica and scoliosis. (*Id.*) Dr. Iben examined Plaintiff and found that she had scoliosis, an abnormal gait, shortness of breath, a cough, and difficulty breathing. (R. at 345–46.) He observed that her lungs sounded normal, with no wheezing, and that she had a normal heart rate, heart rhythm, and normal hip rotation. (*Id.*) He diagnosed Plaintiff with scoliosis of the dorsal spine, shoulder pain, neck pain, migraines, and chronic obstructive pulmonary disease (COPD). (R. at 347.) Dr. Iben saw Plaintiff consistently from November 2014 through December 2015, during which time his treatment notes and results stayed fairly consistent, with the exception of Plaintiff's breathing issues dissipating after her first visit. (R. at 355, 364, 367, 370, 373, 376, 379, 382, 386, 864, and 867.)

Dr. Iben completed a questionnaire on Plaintiff's behalf on March 3, 2015. (R. at 316–20.) He reported that Plaintiff had the following diagnoses: coronary artery disease, dorsal scoliosis, COPD, gastroesophageal reflux disease (GERD), shoulder pain, hip pain, and sciatica, causing fatigue, neck pain, back pain, shoulder pain, tenderness, muscle weakness, weight

4

change, and impaired sleep. (R. at 316–17.) He noted that her prognosis is "good with appropriate medication." (R. at 316.) As for her functional capacity, Dr. Iben opined that Plaintiff's cervical range of motion was decreased, that she could sit up to 30 minutes at a time and stand up to 15 minutes at a time, that she could walk only half a block without rest, sit for only 2 hours in an 8-hour workday, and that she must walk for 10 minutes every 30 minutes. (R. at 318–19.) He further opined that she can occasionally lift less than 10 pounds, can rarely lift 10 pounds, can never lift 20 or more pounds, can never twist or climb ladders, can rarely stoop or squat, and can occasionally climb stairs. (R. at 319–20.) He noted that Plaintiff is likely to have some "good days" and some "bad days," but that she would likely be absent from work more than four days per month as a result of her impairments. (R. at 320.)

Hospital records from January 2015 to September 2017 show Plaintiff visiting emergency departments at Grant Medical Center and Mt. Carmel West over forty times complaining of pain. (R. at 400–433, 468–861, 933–1259, 1260–1440; *see also* ECF No. 17 at 5–10.) Several of these records report Plaintiff seeking pain medication and becoming angry if hospital staff refused. (*See* R. at 1372 (hospital staff "had concerns about inappropriate use of narcotic" and noted that they "need to watch her emergency department visits closely"); R. at 941 (Plaintiff became "agitated" after doctors refused to give her pain medication); R. at 1359 (Plaintiff was described as "well-known to this emergency room" and staff noted that "continually coming to the emergency room for pain shots for her chronic back pain is not appropriate"); R. at 1211 (staff noted that Plaintiff "acts as if she is fine once staff walk out of [the] room" and that her "vital signs are not indicative of her pain rating"); R. at 1432 (notes indicate "drug seeking behavior").)

## IV. ADMINISTRATIVE DECISION

On July 12, 2013, the ALJ issued his decision. (R. at 12–36.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2014, her alleged onset date. (R. at 17.) At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, hepatitis C, migraines, hypertension, coronary artery disease (CAD), chronic obstructive pulmonary disease (COPD), leg length discrepancy, scoliosis, osteoarthritis, degenerative joint disease, degenerative disc disease status post fusion, affective disorder, anxiety, posttraumatic stress disorder (PTSD), personality disorder, and substance use disorder. (R. at 18.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she can stand and walk 30 minutes

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

at one time for a total of four hours in an eight hour workday. The claimant can frequently balance and reach overhead. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. She can tolerate frequent exposure to extreme temperatures, humidity, atmospheric conditions, and pulmonary irritants. The claimant can never be exposed to hazards such as dangerous machinery or unprotected heights. She can understand and remember simple and moderately complex instructions and perform these tasks. The claimant can tolerate occasional changes in the work setting that are explained.

(R. at 21.)

Relying on testimony from the VE, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, she can perform her past relevant work as a telemarketer. (R. at 30–31.) He also found that Plaintiff can perform other jobs that exist in significant numbers in the national economy, including film touch-up inspector, document preparer, and printed circuit board touchup screener. (*Id.*) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 31.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her sole assignment of error, Plaintiff asserts that the ALJ impermissibly bypassed the controlling weight analysis and the two-step process required by the treating physician rule when he assigned little weight to the opinions of Dr. Iben. (ECF No. 12 at 4–13.) In discounting Dr. Iben's opinions, the ALJ found them to be inconsistent with Dr. Iben's own treatment notes and inconsistent with the medical record as a whole. (R. at 27.) In support of his conclusion, the ALJ explained as follows:

> Dr. Iben opined the claimant was unable to work a full eight hour workday. The opinions of Dr. Iben are not supported by his own treatment notes including the mostly intact objective findings including normal breathing sounds, heart rate, heart rhythm, range of motion, strength, reflexes, and sensation with the exceptions of abnormal gait. The opinions of Dr. Iben are inconsistent with the record as a whole including the mostly intact objective finding such as gait, range of motion, strength,

8

> reflexes, and sensation with the exceptions of abnormal gait, muscle spasms in her lumbar spine, and tenderness in her left leg and cervical and lumbar spines. In addition, Dr. Iben apparently relied heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most of what the claimant reported.

(*Id.*) (internal citations omitted).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under Blakley and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will

10

consider opinions of treating physicians "on the nature and severity of your impairment(s),"
opinions on issues reserved to the Commissioner are generally not entitled to special
significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Dr. Iben is a treating physician and that his opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the Plaintiff's] case record . . . ." 20 C.F.R. § 404.1527(d)(2). However, the ALJ concluded that Dr. Iben's opinions *were* inconsistent with other substantial evidence in the record and he therefore assigned little weight to those opinions. (R. at 27.) This conclusion is clearly supported by substantial evidence. For example, Dr. Iben's own notes show that Plaintiff had normal breathing sounds, heart rate, heart rhythm, range of motion, strength, reflexes, and sensation with the exception of abnormal gait. (R. at 27, citing R. at 346, 358, 361, 363, 367, 370, 373, 376, 379, 382, 386, 867, 870, 873, 876, 879, 882, 885, 888, 891, 893, 886.) The ALJ properly discounted Dr. Iben's opinion because it was inconsistent with his own treatment notes. *See Gaskin v. Comm'r Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) (finding that an ALJ properly rejected portions of a treating physician's opinion because they were inconsistent with other evidence in the record, including the treating physician's own treatment notes).

Likewise, the ALJ's determination that Dr. Iben's opinion was inconsistent with other evidence in the record is also supported by substantial evidence. By way of example, other record evidence shows Plaintiff's intact gait, range of motion, strength, reflexes, and sensation with certain noted exceptions. (R. at 27, citing R. at 409, 435, 459, 478, 496, 521, 574, 581–82, 619, 663, 671, 710, 720, 738, 766, 773–74, 781–82, 791, 813, 842, 907, 909, 926–28, 941, 968, 994–95, 1022, 1052, 1093, 1152, 1180–81, 1209, 1268, 1274, 1278, 1319, 1331,1335, 1339,

1344, 1353, 1359, 1382, 1387, 1398, 1402, and 1414.) The ALJ correctly determined that Dr. Iben's opinion was not entitled to controlling weight. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (affirming an ALJ's rejection of a treating physician's opinion where it was inconsistent with other record evidence).

Finally, the ALJ explained that he discounted Dr. Iben's opinions due to his substantial reliance on Plaintiff's subjective reports of symptoms and limitations. (R. at 27.) The ALJ found Dr. Iben to have uncritically accepted as true much of what Plaintiff told him. (*Id.*) This is a proper basis to discount a treating physician's opinion. *See Krakow v. Comm'r of Soc. Sec.*, No. 13-14388, 2015 WL 1301300, at *6 (E.D. Mich. Mar. 23, 2015) (citing *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990)) ("An ALJ may properly discount a medical opinion that is based on a claimant's subjective complaints rather than on objective medical evidence.").

Plaintiff contends that the ALJ never analyzed Dr. Iben's opinions for controlling weight and failed to provide good reasons for affording lower weight to the opinions. (ECF No. 12 at 5–13.) The Commissioner asserts that the ALJ *did* analyze Dr. Iben's opinions for controlling weight, specifically stating that he "gives little weight to the opinion of the treating physician Glen Iben, MD., because they are inconsistent with the medical record as a whole." (R. at 27.) As for failing to provide good reasons, the Commissioner notes that "ALJs are not required to engage in 'an exhaustive, step-by-step analysis of each factor.'" (ECF No. 17 at 13 (citing *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).) Even so, the Commissioner points to the ALJ's explanation of the record evidence that he found to be inconsistent with Dr. Iben's opinions. (ECF No. 17 at 13–15.)

The Undersigned agrees with the Commissioner that the ALJ provided sufficient "good reason" under the applicable regulations for assigning non-controlling weight to the treating physician's opinions. The ALJ cited record evidence inconsistent with Dr. Iben's findings. (R. at 27.) Specifically, the ALJ pointed to Dr. Iben's own treatment records in which he does not mention any significant lifting or range of motion limitations. (R. at 27, internal citations omitted.) The ALJ also pointed to other record evidence that he found contradicted Dr. Iben's opinions, including findings that Plaintiff had a normal range of motion, normal strength, heart rate, and breathing sounds. (*Id.*) These are "good reasons." *Gaskin*, 280 F. App'x at 475; *Francis*, 414 F. App'x at 806.

An additional reason provided by the ALJ for his discounting of Dr. Iben's opinions was that he observed that Dr. Iben relied on Plaintiff's subjective report of her symptoms and limitations, "uncritically accept[ing] as true most of what the [Plaintiff] reported." (R. at 27.) As the Commissioner noted, the ALJ, unlike Dr. Iben, had the benefit of analyzing notes from the various physicians that had expressed doubts as to the legitimacy of Plaintiff's complaints based on her frequent trips to the emergency room and her behavior surrounding pain medication. (ECF No. 17 at 15.) Again, an ALJ may properly discount a treating physician's opinion if it is based on the Plaintiff's subjective complaints. *Krakow*, 2015 WL 1301300, at *6.

Here, the ALJ pointed to specific record evidence in support of his decision to discount Dr. Iben's opinions, satisfying the "good reason" requirement of the treating physician rule. *See Friend*, 2010 WL 1725006, at *7 (holding that the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); *see also Tilley*, 394 F. App'x at 222 (indicating that, under the good reason rule, an ALJ is not required to explicitly address all of the

six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Substantial evidence supports the ALJ's conclusion that the record contains evidence inconsistent with Dr. Iben's opinions. The Sixth Circuit has held that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted).

The ALJ followed the proper analysis and adhered to the treating physician rule, providing "good reasons" for assigning less than controlling weight to Dr. Iben's opinions. Accordingly, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED.**

## VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Error and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: February 5, 2020**                                      */s/ Elizabeth A. Preston Deavers*
                                                                  **ELIZABETH A. PRESTON DEAVERS**
                                                                   **CHIEF UNITED STATES MAGISTRATE JUDGE**